JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   EDCV 20-00831JVS(SPx)                     Date   6/25/2020

Title   Arthur Barnes v. Target Corporation, et al

Present: The Honorable        **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings:     **[IN CHAMBERS]** Order Regarding Motion to Remand and Motion to Strike

Plaintiff Arthur Barnes ("Barnes") moved to remand this action to San Bernardino Superior Court pursuant to 28 U.S.C. § 1447(c) and to strike the declaration of Paul F. White, Ph.D. ("White Decl.") pursuant to Federal Rule of Civil Procedure 12(f).  Mot., Dkt. No. 28.  Defendant Target Corporation ("Target") opposed.  Opp'n, Dkt. No. 34. Barnes replied.  Reply, Dkt. No. 40.

For the following reasons, the Court **grants** the motion to remand and **denies** as moot the motion to strike.

## I. BACKGROUND

On March 13, 2020, Barnes filed a Complaint against Target in San Bernardino Superior Court, asserting class claims for relief arising out of Barnes's employment. Complaint, Dkt. No. 1-A.  The class claims alleged (1) failure to pay overtime compensation; (2) failure to provide itemized wage statements; and (3) failure to pay waiting time penalties. Id. ¶¶ 29-40.  Barnes asserted his class claims on behalf of "all other persons similarly situated who worked for Target at its Rialto T-3806 Distribution Center in California between March 21, 2019 and August 11, 2019, as a non-exempt hourly employee."  Id. ¶ 4.  The Complaint also alleges three sub-classes.  Id. ¶¶ 15-20.

In the Complaint, Barnes alleges that Target had a "consistent policy of failing to pay overtime wages" to hourly, non-exempt employees at its T-3806 Rialto California

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-00831JVS(SPx) | Date | 6/25/2020 |
|---|---|---|---|

| Title | Arthur Barnes v. Target Corporation, et al |
|---|---|

Distribution Center (the "Rialto DC").  Id. ¶ 30.  Barnes claims that Target utilized an unlawful alternative week schedule ("AWS") to systematically under-compensate employees who worked in excess of 8 hours in a day/shift.  Id.  Moreover, he alleges that Target "knowingly and intentionally" provided hourly, non-exempt employees at the Rialto DC with inaccurate itemized wage statements that masked under-payments.  Id. ¶ 34.  Further, he claims that Target "willfully failed and refused to timely pay overtime compensation" to hourly, non-exempt employees at the Rialto DC whose employment terminated.  Id. ¶ 38.

On April 17, 2020, Target filed its Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1446.  Not., Docket No. 1.  Target alleged that Class Action Fairness Act ("CAFA") jurisdiction exists because there is complete diversity between the parties, there are at least 1,067 putative class members, and the amount in controversy exceeds $5 million based on payroll, time-punch, and hours worked data, as well as attorneys' fees.  Id. ¶¶ 25-26, 30-31, 36-37, 52-54.

## II. LEGAL STANDARD

### A.    Motion to Remand

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action from state court to federal court so long as original jurisdiction would lie in the court to which the action is removed.  City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 163 (1997).  According to the Ninth Circuit, courts should generally "strictly construe the removal statute against removal jurisdiction."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  This "'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  Id. (quoting Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 n.3 (9th Cir. 1990)).

However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."  Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014).  CAFA provides district courts with original jurisdiction over any class action in which (1) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-00831JVS(SPx) | Date | 6/25/2020 |
|---|---|---|---|

| Title | Arthur Barnes v. Target Corporation, et al |
|---|---|

defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100.  28 U.S.C. §§ 1332(d)(2), (d)(5).

A defendant need not submit evidence to support its amount in controversy allegation, which "should be accepted when not contested by the plaintiff or questioned by the court."  Dart Cherokee, 134 S. Ct. at 553.  But if the plaintiff contests the defendant's allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  Id. at 553-54.  However, "[d]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met."  Id. at 554 (citing H.R. Rep. No. 112-10, p. 16 (2011)).  "If [a] defendant presents such proof, it then becomes plaintiff's burden to show, as a matter of law, that it is certain he will not recover the jurisdictional amount."  Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing De Aguilar v. Boeing Co., 47 F.3d 1404, 1411 (5th Cir.1995)).

## B.    Motion to Strike

Under Rule 12(f), a party may move to strike any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f).  A motion to strike is appropriate when a defense is insufficient as a matter of law.  Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982).  The grounds for a motion to strike must appear on the face of the pleading under attack, or from matters of which the Court may take judicial notice.  SEC v. Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995).

The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).  "As a general proposition, motions to strike are regarded with disfavor because [they] are often used as delaying tactics, and because of the limited importance of pleadings in federal practice."  Sands, 902 F. Supp. at 1165-66 (alteration in original) (internal quotation marks omitted).

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     EDCV 20-00831JVS(SPx)                    Date     6/25/2020

Title        Arthur Barnes v. Target Corporation, et al

---

Therefore, courts frequently require the moving party to demonstrate prejudice "before granting the requested relief, and 'ultimately whether to grant a motion to strike falls on the sound discretion of the district court.'" Greenwich Ins. Co. v. Rodgers, 729 F. Supp. 2d 1158, 1162 (C.D. Cal. 2010) (quoting Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal.2002)).

### C.     Attorney's Fees

"[T]he standard for awarding fees [on a remand motion] should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

### III. DISCUSSION

### A.     Request for Judicial Notice

Target seeks judicial notice of six documents in support of its Notice of Removal. Defendant's Request for Judicial Notice ("DRJN I"), Dkt. No. 6.  Barnes does not oppose.  Barnes seeks judicial notice of two documents in support of its motion to remand.  Plaintiff's Request for Judicial Notice ("PRJN"), Dkt. No. 30.  Target does not oppose.  Target seeks further judicial notice of thirty documents in support of its Opposition.  Defendant's Request for Judicial Notice ("DRJN II"), Dkt. No. 35.  Barnes does not oppose.

Under Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record if the facts are not "subject to reasonable dispute." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); see Fed. R. Evid. 201(b).  Additionally, the Court "may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." Bias v. Monynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal citations and quotation marks omitted).  The Court takes judicial notice of the documents in the DRJN I, PRJN, and DRJN II pursuant to Fed. R. Evid. 201.  All of the documents in the DRJN I, PRJN, DRJN II are either matters of public record or court proceedings and thus

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | EDCV 20-00831JVS(SPx) | Date | 6/25/2020 |

| | |
|---|---|
| Title | Arthur Barnes v. Target Corporation, et al |

contain facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

### B.   Motion to Remand

Barnes does not contest that his Complaint satisfies the numerosity and diversity requirements for removal pursuant to CAFA. Barnes only argues that Target has failed to show by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 such that CAFA jurisdiction exists. Mot. at 8, 13.

### 1.   Evidence Submitted in Support of Removal

Barnes did not demand a specific amount of damages in the state-court Complaint and alleged that the putative class had been damaged in an amount less than $5,000,000. See Compl. ¶ 40. In such a situation, where "damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) (citing Rodriguez v. AT & T Mobility Servs. LLC,728 F.3d 975, 981 (9th Cir. 2013)). "[T]his rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million." Id.

The evidence that may be submitted in support of removal includes affidavits, declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Id. (quoting Singer v. State Farm Mut. Auto Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Id. However, "[a]n affidavit showing that potential damages exceed the jurisdictional amount may satisfy Defendant's burden." Allchin v. Volume Servs., Inc., No. 215CV00886TLNEFB, 2016 WL 704616, at *10 (E.D. Cal. Feb. 23, 2016) (citing Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 397 (9th Cir. 2010); Ibarra, 775 F.3d at 1197). There is no obligation at this stage for a removing defendant to produce the business records or payroll data upon which its declarant relies. See Jones v. Tween Brands, Inc.,

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-00831JVS(SPx) | | Date | 6/25/2020 |
|---|---|---|---|---|

| Title | Arthur Barnes v. Target Corporation, et al | |

No. 2:14–CV–1631–ODW, 2014 WL 1607636, at *2 (C.D. Cal. Apr. 22, 2014) (finding that defendant was not required to provide the payroll data upon which declarant relied); Jimenez v. Allstate Ins. Co., No. CV 10–8486 AHM FFM, 2011 WL 65764, at *2 (C.D. Cal. Jan. 7, 2011) (concluding that declarant established sufficient ground for her testimony "by declaring that her knowledge was based on her normal business responsibilities and her personal review of Defendant's business records").

In support of its notice of removal, Target submitted the declaration of Michael Brewer ("Brewer Decl."). Brewer Decl., Dkt. No. 3. Michael Brewer ("Brewer") is the Director of Employee Relations for Target with "access to Target's California employee data records, including employee punch data, payroll data, and personnel records such as employment history and scheduling." Brewer Decl. ¶ 1-2. Brewer alleges that Target provided its counsel with employment history information and data for scheduling, time-punch, hours worked, pay, wage-rate, and compensable walk time for its hourly employees at the Rialto DC during the class period. Id. ¶¶ 6, 8, 11, 13. This information was then provided to Paul F. White, Ph.D. ("White"). Id.

Additionally, Target submitted the declaration of Anna M. Skaggs ("Skaggs Decl."). Skaggs Decl., Dkt. No. 4. Anna Skaggs ("Skaggs") is one of the attorneys representing Target. Id. ¶ 1. Skaggs alleges that the consolidated cases of Loughrie v. Target Corp., No. CIVDS1720075, Espinoza v. Target Corp., No. CIVDS1724914, and Loughrie v. Target Corp., No. CIVDS1804580 (the "Loughrie Actions"), involved a purported class of non-exempt Target employees at California distribution centers. Id. ¶¶ 6-8. Skaggs claims that the Loughrie Actions arose due to numerous wage-and-hour violations, including failure to pay wages, failure to provide accurate itemized wage statements, and failure to pay waiting-time penalties. Id. Further, Skaggs alleges that approximately 10 months after the first Loughrie action was filed, the Loughrie Actions settled at mediation, with plaintiffs' counsel receiving an award of attorneys' fees equal to 31.82% of the total settlement amount. Id. ¶ 9.

Moreover, Target submitted the declaration of Paul F. White, Ph.D. White is a Partner at Resolution Economics Group, LLC. White Decl. ¶ 1. Target retained White to determine whether the amount in controversy exceeds $5,000,000. Id. ¶ 4. In calculating the amount in controversy, White analyzed data pertaining to employees' identification numbers, effective and expiration dates for AWSs, and workday hours, termination dates,

JS - 6

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-00831JVS(SPx) | Date | 6/25/2020 |
|---|---|---|---|

| Title | Arthur Barnes v. Target Corporation, et al | | |

and payroll and time-punch data for employees of all California distribution centers during the class period.  Id. ¶ 6.  White accounted for attorneys' fees of 31.82 percent of all other alleged recovery, or $1,208,061, "at the request of counsel."  Id. ¶ 19-e.

　　　In support of its Opposition, Target submitted an additional declaration of Paul F. White Ph.D. ("White Decl. II").  White Decl. II, Dkt. No.37.  Target alleges that the inclusion of eight employees, who were omitted from White's initial calculations due to erroneous missing values in their HR scheduling data, increases the amount in controversy for each of the claims.  Id. ¶¶ 16-17.  Target claims that these eight employees belong in the putative class because they "generally worked shifts of 9.4 to 12 hours on average."  Id. ¶ 16.  However, Target does not provide information to establish that the additional eight employees were class members at the time of removal. Moreover, Target alleges that three of these additional employees belong in the waiting time penalties class, but provides no information regarding the employees' termination history.  See id. ¶ 17-c.  Further, although White provides the amount by which each claim's amount in controversy increased, he does not include an explanation as to how he calculated each figure.  See id. ¶ 17.  Without information to establish the additional employees as members of the putative class and an explanation as to how White reached each figure, the Court cannot verify whether the adjusted amount in controversy totals are anything other than "mere speculation" or "conjecture."  See Ibarra, 775 F.3d at 1197. Accordingly, the Court does not consider Target's alleged amount in controversy totals included in White Decl. II.

　　　　　　2.　　Failure to Pay Overtime Compensation

　　　The Notice of Removal provides that the total amount in controversy for this claim is $1,065,338.  Not., ¶ 26-e.  White's declaration establishes his method for reaching this figure, and states in relevant part:

　　　9.　　To calculate the value of overtime compensation, I first added 8 minutes to the duration of each shift [to account for "compensable walking time"]. Second, I then identified work shifts where this value was in excess of 8 hours.  For these shifts, I computed the hours or fraction of hours worked in excess of 8 hours up to and including 10 hours.  This difference was then multiplied by 0.5 times the employee's hourly pay rate in that work week.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   EDCV 20-00831JVS(SPx)                    Date   6/25/2020

Title   Arthur Barnes v. Target Corporation, et al

> Based on this analysis, I identified 1,067 Rialto CA DC team members for
> inclusion in the overtime compensation analysis.

White Decl. ¶ 9.

Barnes alleges that Target "had a consistent policy of failing to pay for all overtime
hours (including double time) worked (after 8 hours in a day/shift) by the Class
Members" that resulted in Target "systematically" under-compensating the putative class
members.  Compl. ¶¶ 5, 30.  Therefore, it was reasonable for White to assume an
overtime violation for all employees at the Rialto DC who worked in excess of eight
hours, up to ten hours.  Under Labor Code Section 510, "any work in excess of eight
hours in one workday . . . shall be compensated at the rate of no less than one and one-
half times the regular rate of pay for an employee."  Cal. Labor Code § 510(a).  It was
therefore reasonable and conservative for White to calculate overtime violations at one
and one-half the employees' hourly pay rate.  Moreover, Plaintiff provides no evidence
that this estimate is unreasonable in light of the allegations in the Complaint.[1]

Accordingly, Target establishes that $1,065,338 is the total amount in controversy
for the first cause of action.

### 3.   Failure to Provide Itemized Wage Statements

The Notice of Removal provides that the total amount in controversy for this claim
is $1,749,950.  Not., ¶ 31-b.  White's declaration establishes his method for reaching this
figure, and states in relevant part:

---

[1] In support of his motion to remand, Barnes submitted the Declaration of Joseph R. Becerra (the
"Becerra Decl.").  Dkt. No. 29.  Target objected.  Dkt. No. 36.  Barnes alleges that his retained expert,
James Toney ("Toney") calculated the total amount in controversy for each claim at a different value
than that calculated by White.  Becerra Decl. ¶ 11.  However, because the declaration does not explain
Toney's methodology for reaching each total, the testimony cannot be relied upon.  Fed. R. Evid. 702
("A  witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise if: . . .
(c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably
applied the principles and methods to the facts of the case.").  Therefore, the Court sustains Target's
objection and does not consider the Becerra Decl.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    EDCV 20-00831JVS(SPx)                     Date    6/25/2020

Title    Arthur Barnes v. Target Corporation, et al

    a.      First, I merged time punch data, workday hours data, and payroll data using identification numbers and calculated the workweeks that each team member worked at least one shift of over 8 hours while covered by an alternative workweek schedule in the period from March 21, 2019 to August 10, 2019 that is covered by the alternative workweek schedule. Based on this analysis, I identified 1,067 Rialto CA DC team members for inclusion in the wage-statement penalties analysis.

    b.      Second, for each team member's initial workweek identified in the preceding step, I assigned a wage-statement penalty of $50. For the subsequent workweeks for each team member, I assigned a wage statement penalty of $100 per workweek.

    c.      Per statute, I capped each team member's maximum total wage statement penalties at $4,000.

    d.      Third, I summed the wage-statement penalties calculated in the preceding steps.

White Decl. ¶ 13.

    Barnes alleges that Target had a "consistent policy" of issuing wage statements for "all work performed" during the alleged class period that included the "incorrect rates of pay, hours worked[,] and incorrect earnings as a result of [Target's] failure to pay overtime after 8 hours of work in a day/shift." Compl. ¶¶ 6, 13. Therefore, it was reasonable for White to assume a wage statement violation for all employees at the Rialto DC who worked at least one overtime shift in a given week. Moreover, it was reasonable and conservative for White to cap each employee's maximum penalty at $4,000 per Labor Code Section 226, rather than unreasonably applying the maximum penalty to each employee. Moreover, Barnes provides no evidence that Target's estimate is unreasonable in light of the allegations in his Complaint.

    Thus, Target establishes that $1,749,950 is the total amount in controversy for the second cause of action.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | EDCV 20-00831JVS(SPx) | Date | 6/25/2020 |

| | |
|---|---|
| Title | Arthur Barnes v. Target Corporation, et al |

4.    <u>Failure to Pay Waiting Time Penalties</u>

The Notice of Removal provides that the total amount in controversy for this claim is $981,257.  Not., ¶ 37-e.  White's declaration establishes that he first identified all employees at the Rialto DC who worked at least one shift of more than 8 hours during the class period while covered by an AWS on or before their termination date that occurred on or after March 21, 2019.  <u>See</u> White Decl. ¶ 16.  The declaration then explains White's method for reaching this figure, and states in relevant part:

a.    First, I calculated each team member's average shift length using the worked hours provided in the time punch data discussed above.  In doing so, I only used shifts that occurred during the period covered by an alternative workweek on or after March 21, 2019 and on or before the team member's termination date.

b.    Second, based on the allegations in plaintiff's complaint, I assumed that the 186 Rialto CA DC team members were each entitled to up to 30 days' worth of waiting-time penalties.

c.    Third, I calculated each team member's waiting-time penalties as the team member's average shift length (for shifts that occurred on or after March 21, 2019 and including 8 minutes of walking time per shift), times the team member's rate of pay at termination as provided in the payroll data, times up to 30 days.

d.    Fourth, I summed the waiting-time penalties calculated in the preceding step.

<u>Id.</u> ¶ 17.

Barnes alleges that Target "willfully failed and refused to timely pay overtime compensation to putative Class Members whose employment terminated," and therefore owes waiting time penalties to those former employees.  Compl. ¶ 38.  Under Labor Code Section 203, "[i]f an employer willfully fails to pay . . . an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date

JS - 6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   EDCV 20-00831JVS(SPx)                    Date   6/25/2020

Title   Arthur Barnes v. Target Corporation, et al

thereof at the same rate until paid or until an action therefor is commenced." Cal. Labor Code § 203(a). However, "the wages shall not continue for more than 30 days." Id.

Barnes argues that Target assumed a 100 percent violation rate without providing evidentiary support. Reply, 2. However, Barnes filed his Complaint and this action therefore commenced on March 13, 2020, which was more than 30 days after the class period ended on August 11, 2019. Thus, Target does not need to provide evidence of how long it actually delayed in paying; it is reasonable to apply the maximum 30–day waiting time penalty.

Moreover, Barnes contends that White's calculations are unreasonable given the significantly lower calculations of amount per class member for § 203 penalties that he provided in the Loughrie Actions. Mot. at 14. However, in his supplemental declaration, White provides the average pay rate at termination for the class members as $15.59 in Loughrie v. Target, $15.53 in Espinoza v. Target, and $19.01 in the instant case. White Decl. II ¶ 9. Target alleges that the difference in average pay rate, and thus in amount per class member, is due to the different composition of job titles in each class and the substantially fewer seasonal employees in the instant class. See id. ¶ 12-15, Ex. B; Opp'n, 13-14. Thus, Target has adequately shown that White's calculation of § 203 penalties is reasonable.

Therefore, Target establishes that $981,257 is the total amount in controversy for the third cause of action.

   5.   Attorneys' Fees

Barnes argues that Target cannot satisfy the $5,000,000 jurisdictional amount because the Ninth Circuit calculates the amount of attorneys' fees in controversy under CAFA as 25 percent of all other alleged recovery. Mot. at 8-9. Barnes asserts that 25 percent of all other alleged recovery is equal to $949,136.25 ($3,796,545 x 0.25), and thus the total amount in controversy is equal to $4,745,681.25 ($3,796,545 + $949,136.25), which falls below the requisite $5,000,000. Id. at 10. Target counters that the Ninth Circuit has rejected a per se rule of utilizing a 25 percent benchmark for the estimation of attorneys' fees under CAFA. Opp'n, 6. The Court agrees. In Fritsch v. Swift Transp. Co., 899 F.3d 785, 796 (9th Cir. 2018), the Ninth Circuit "reject[ed]

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-00831JVS(SPx) | | Date | 6/25/2020 |
|---|---|---|---|---|

| Title | Arthur Barnes v. Target Corporation, et al | |
|---|---|---|

[defendant]'s argument that [the court] should hold that, as a matter of law, the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery." Rather, "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; [the court] may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation." Id. Accordingly, the Court weighs the evidence presented by each party.

In its Notice of Removal, Target alleges that 31.82 percent of the total alleged recovery should be included in the amount in controversy as the reasonably assumed attorneys' fees. Not., ¶ 52. Target claims that this is a reasonable assumption because of the overlap between the instant case and the consolidated Loughrie Actions, where the awarded attorneys' fees were equal to 31.82 percent of the total recovery. Id. ¶ 51. Specifically, Target argues that the Loughrie Actions and the instant case involve "the same claims, the same putative classes, and the same plaintiff's counsel." Opp'n, 7. Although Target claims that the Loughrie Actions settled with limited litigation (Id. at 7-8), Barnes alleges that the Loughrie Actions involved various motions, depositions, and site inspections. Reply, 4-6.

Barnes contends that Target's assumption of attorneys' fees is based on conjecture and speculation. Mot. at 10. Barnes argues that the Loughrie Actions are not a reasonable basis of comparison to the instant case because the Loughrie Actions involved a significantly larger class, longer class period, and more distribution centers at issue, causes of action asserted, and prosecuting law firms. Reply, 7. Moreover, Barnes argues that the attorneys' fees should be estimated on a pro rata basis. Id. at 2. "[T]he Ninth Circuit has indicated that courts should calculate attorney's fees for amount in controversy purposes on a per-class-member basis . . . . Courts have interpreted [this] to mean that, in representative actions, like class actions . . . courts should assess attorney's fees for jurisdictional purposes on a pro rata basis." Snow v. Watkins & Shepard Trucking, Inc., No. EDCV182206DMGSPX, 2019 WL 1254571, at *5 n.2 (C.D. Cal. Mar. 18, 2019) (citations omitted). Barnes therefore asserts that relying on the amount of attorneys' fees per class member awarded in the Loughrie Actions–$251.65, or $2,600,000 between 10,332 class members–does not elevate the amount in controversy here above $5,000,000. Reply, 2. Here, an award of attorneys' fees at $251.65 for 1,067

JS - 6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | EDCV 20-00831JVS(SPx) | Date | 6/25/2020 |
|---|---|---|---|

| Title | Arthur Barnes v. Target Corporation, et al |
|---|---|

putative class members would be equal to $268,510.55 for a total amount in controversy of only $4,065,055.55 ($3,796,545 + $268,510.55).  Id.

Thus, the Court finds that the differences between the <u>Loughrie</u> Actions and the instant case outweigh the similarities, such that Target has failed to prove by a preponderance of the evidence that the present attorneys' fees should be assumed at 31.82 percent of the total alleged recovery.

Moreover, Target references fees requests made by Plaintiff's counsel in other wage-and-hour class actions that exceeded 32 percent of the total recovery.  Opp'n 10-11. Target additionally cites various wage-and-hour and employment cases where the award of attorneys' fees was disproportionate to the underlying wage and penalty recoveries. <u>Id.</u> at 12-13.  However, "[d]efendant's mere citation to cases in which counsel sought larger proportions of a class's recovery as attorneys' fees, without more, does not support Defendant's allegations as to the amount in controversy here."  <u>Gonzalez</u> v. <u>Hub</u> <u>Int'l</u> <u>Midwest</u> <u>Ltd.</u>, No. EDCV19557PAASX, 2019 WL 2076378, at *6 (C.D. Cal. May 10, 2019).  Rather, the defendant must adequately analogize the facts, allegations, and circumstances of the cited cases to the instant matter in order to meet its burden.  <u>See</u> <u>Serran</u> <u>v.</u> <u>Pac.</u> <u>Coast</u> <u>Feather</u> <u>Cushion</u> <u>Co.</u>, No. CV 17-4414-DMG (JEMx), 2017 WL 3720630, at *3 (C.D. Cal. Aug. 28, 2017).  Here, Target does not sufficiently compare the facts, circumstances, or allegations from the cited cases to the instant case.

Accordingly, Target fails to meet its burden of establishing that the amount in controversy exceeds $5,000,000 such that CAFA jurisdiction exits.  The Court therefore **grants** the motion to remand.

### C.      Motion to Strike

Because the Court **grants** the motion to remand, the Court **denies** as moot the motion to strike.

### D.      Attorneys' Fees

Barnes moves for the costs and attorneys' fees incurred in preparing the motion, in the amount of $18,608.50.  Mot. at 15.  The Court has discretion to award the plaintiff

JS - 6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-00831JVS(SPx) | Date | 6/25/2020 |
|---|---|---|---|

| Title | Arthur Barnes v. Target Corporation, et al | | |

just costs and expenses, including attorneys' fees, incurred due to the removal.  28 U.S.C. § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  Martin, 546 U.S. at 141.

Here, the Court finds that Target had an objectively reasonable basis for removal. If Target had shown by a preponderance of the evidence that the amount in controversy exceeded $5,000,000, Target would have established federal jurisdiction.  Target provided appropriate evidence in support of removal.  That Target failed to show by a preponderance of the evidence that the amount in controversy was met does not mean that Target lacked an objectively reasonable basis for seeking removal.  See Gardner v. UICI, 508 F.3d 559, 562 (9th Cir. 2007) ("Under Martin, however, whether a removal is improper is not dispositive in determining whether fees should be awarded under 28 U.S.C. § 1447(c)."); see also Martin, 546 U.S. at 140 ("[T]here is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases.").  Therefore, although Target failed to meet its burden, the Court finds that Target's removal was not objectively reasonable.  Accordingly, the parties should bear their own costs and fees.

Barnes's request for attorneys' fees and costs is therefore **denied**.

## IV. CONCLUSION

For the foregoing reasons, the Court **grants** the motion to remand and **denies** as moot the motion to strike.

## IT IS SO ORDERED.

| | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |